IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| NICO FARMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.:   2:21-CV-152-RLJ-CRW |
| | ) | |
| TONY PARKER, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, a prisoner proceeding pro se and *in forma pauperis* in this civil rights action for violation of 42 U.S.C. § 1983, has filed an amended complaint that is before the Court for screening in accordance with the Prison Litigation Reform Act ("PLRA").  *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).  For the reasons set forth below, Plaintiff's claim of retaliation will proceed against Defendant CO Tranyor, and the remaining claims and Defendants will be dismissed.

## I.    SCREENING STANDARD

Under the PLRA, district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune.  *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).

The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)."  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim are insufficient to state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a claim upon which relief may be granted. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

## II.    ALLEGATIONS OF AMENDED COMPLAINT

While Plaintiff was housed at the Northeast Correctional Complex ("NECX") as a prisoner in the custody of the Tennessee Department of Correction ("TDOC"), Internal Affairs ("IA") Officer Treller approached Plaintiff and asked him to provide information about drugs and contraband in the facility [Doc. 24 p. 5]. Plaintiff agreed to work for Officer Treller and began providing Treller information [*Id.*]. NECX Correctional Officer ("CO") Tranyor read all inmate grievances and requests that came through the mail, and Tranyor allegedly informed "inmates and gang members" that Plaintiff was working for Treller [*Id.*]. As a result, Plaintiff maintains, other inmates put out a "kill on sight" order against Plaintiff [*Id.*].

Plaintiff contends that because he called the Prison Rape Elimination Act ("PREA") hotline, wrote grievances, and made inmate requests, Tranyor retaliated by using a racial slur against him and by sometimes denying him a shower "for several weeks at a time" [*Id.* at 4]. Plaintiff states that Grievance Chairperson, Mrs. Dunn, did not properly process Plaintiff's

grievances as required by TDOC policy, Defendant Stout failed to respond to Plaintiff's inmate requests, and Defendants Bert Boyd and Lee Dotson acted to "cover up" the alleged constitutional violations [*Id*. at 4-5]. Plaintiff further alleges that Warden Andrews did not respond to Plaintiff's requests about sexual assaults and threats, and he thereafter wrote a "dishonest" PREA report in June 2021 that Plaintiff refused to sign because it "cover[ed] up the truth" [*Id*.].

Aggrieved of these incidents, Plaintiff seeks transfer to one of three specific TDOC facilities and the award of monetary damages against each Defendant [*Id*. at 6].

### III.    ANALYSIS

#### A.    Official Capacity

Plaintiff seeks monetary damages against Defendants, all of whom are TDOC employees. A suit against a defendant in his or her official capacity is treated as an action against the governmental entity the officer represents. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"). Plaintiff's claims against Defendants in their respective official capacities are, therefore, essentially claims against TDOC. *See Graham*, 473 U.S. at 166; *see also Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.").

However, neither a state nor an arm of its government is a "person" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). TDOC is an arm of the State of Tennessee. *See Hix v. Tenn. Dep't of Corr*., 196 F. App'x 350, 355 (6th Cir. 2006) (holding TDOC is equivalent of the "State" and is not a person within the meaning of § 1983).

Moreover, the doctrine of sovereign immunity prohibits suit against a state or its agencies in federal court for damages, unless Congress has abrogated its immunity or the state has expressly

waived it. *See WCI, Inc. v. Ohio Dep't of Pub. Safety*, 18 F.4th 509, 513-14 (6th Cir. 2021). The State of Tennessee has not waived its immunity to suit under § 1983 or state tort law. *Berndt v. State of Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (noting that Tennessee has not waived immunity to suits under § 1983); *Burton v. Durnin*, No. 3:11-CV-429, 2012 WL 946747, at *8 (E.D. Tenn. Mar. 20, 2012) (finding that the "[S]tate of Tennessee has not consented to being sued in federal court for tort claims brought under state law"). Therefore, Plaintiff cannot sustain suit against Defendants in their official capacities, and all official capacity claims will be **DISMISSED**.

### B.      Individual Capacity

This leaves the Court to consider whether Plaintiff has sufficiently alleged an individual capacity § 1983 claim against Defendants. To the extent Plaintiff seeks liability against one or more of these Defendants based on his or her supervisory position, the Court notes that government officials may be individually liable under § 1983 for a failure to supervise only if they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 563 (6th Cir. 2011); *see also Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (explaining that "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).

### 1.      Tony Parker

As Plaintiff's amended complaint levies no allegations against TDOC Commissioner Tony Parker's personal conduct, he will be fully and finally **DISMISSED** for Plaintiff's failure to state a claim against him. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of

4

federal rights" to state a claim upon which relief may be granted under § 1983); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (providing that § 1983 liability cannot be premised upon a theory of respondeat superior).

### 2. IA Treller

Plaintiff alleges only that IA Treller asked him to work for him, and that Plaintiff agreed to do so. Plaintiff has not alleged any facts from which the Court could infer that IA Treller violated Plaintiff's constitutional rights, and therefore, he will be **DISMISSED**.

### 3. Grievances

Plaintiff maintains that Mrs. Dunn, Warden Boyd, Lee Dotson, Warden Andrews, and Mrs. Stout either failed to consider and/or outright denied his inmate grievances. However, inmates have no constitutional right to a grievance procedure, and they therefore have no interest in having any such grievances satisfactorily resolved. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Further, Defendants cannot be held liable for failing to provide Plaintiff with a remedy through the grievance procedure, as "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Accordingly, any alleged infirmities in handling Plaintiff's grievances fail to raise a viable constitutional issue. This is true even if the grievances were not processed in accordance with TDOC policy. TDOC policies do not create a protectable liberty interest, and therefore, failing to follow those policies does not raise an issue of constitutional significance. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional

violation because policy directive does not create a protectible liberty interest). Accordingly, claims against these Defendants will be **DISMISSED**.

### 4. PREA Allegations

Plaintiff contends that his PREA report was dishonest, and that he refused to sign it for that reason. Even assuming the truth of this allegation, however, violations of the PREA cannot be redressed through a § 1983 suit. *Gennoe v. Washburn*, No. 3:19-CV-00478, 2019 WL 5693929, at *5-6 (M.D. Tenn. Nov. 4, 2019). Therefore, he has failed to state a § 1983 claim against Defendant Andrews upon which relief may be granted regarding Defendant Andrews' alleged failure to accurately depict the circumstances in the PREA report.

### 5. CO Tranyor

Plaintiff contends that CO Tranyor used a racial slur against him, denied him showers, and shared his mail with other inmates in retaliation for the grievances and requests Plaintiff filed, which placed him in fear of his life.

#### a. Retaliation

A prisoner states a valid retaliation claim if he pleads and proves that: (1) he engaged in protected conduct, (2) an adverse action was taken against him which would deter a person of ordinary firmness from continuing to engage in such conduct, and (3) the adverse action was motivated by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The filing of grievances constitutes constitutionally protected conduct under the First Amendment. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). Additionally, inmates have a protected interest in not being labeled a "snitch." *Catanzaro v. Michigan Dep't of Corr.*, No. 08-11173, 2009 WL 4250027, at *11 (E.D. Mich. Nov. 19, 2009). Plaintiff claims that CO Tranyor's conduct was a retaliatory response to the grievances and requests filed by Plaintiff.

6

Drawing all permissible inferences in Plaintiff's favor, he has stated a plausible retaliation claim against CO Tranyor, and this claim will **PROCEED**.

### 2. Eighth Amendment

The Court otherwise considers whether CO Tranyor's use of a racial slur, denial of showers, and/or outing Plaintiff as a "snitch" warrants relief under the Eighth Amendment, which protects inmates from prison officials' deliberate indifference to a substantial risk of serious harm. *Farmer v. Brennan*, 411 U.S. 825, 837 (1994). A prison official acts with deliberate indifference when the official knows of and disregards an excessive risk to inmate health or safety. *Id.* This standard applies to prison conditions, as well as to prisoner punishments. *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). However, it is well-settled that "[t]he Constitution does not mandate comfortable prisons." *Id.* at 349. Rather, only "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" will violate the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992) (citations and internal quotation marks omitted).

CO Tranyor's alleged use of a racial slur does not rise to the level of a constitutional violation. *Jones Bey v. Johnson*, 248 F. App'x 675, 677 (6th Cir. 2007) (finding that the occasional use of racial slurs, "although unprofessional and reprehensible, does not rise to the level of constitutional magnitude") (quoting *Corsetti v. Tessmer,* 41 F. App'x 753, 755-56 (6th Cir. 2002)); *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (providing that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits). Accordingly, this allegation fails to state an Eighth Amendment claim.

Plaintiff next claims that he was "sometimes" denied a shower for "weeks at a time" by CO Tranyor. The Sixth Circuit "has concluded that deprivation of a shower and other personal hygiene items for a 'brief span of time' ... is not actionable conduct." *Richmond v. Settles*, 450 F.

7

App'x 448, 455 (6th Cir. 2011) (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000); *see Argue v. Hofmeyer*, 80 F. App'x 427, 429-30 (6th Cir. 2003) (citing *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995)). Here, Plaintiff has not provided the Court with any facts that would allow it to determine whether the alleged deprivation was sufficiently protracted to state a claim. Regardless, Plaintiff does not complaint that he suffered any health issues or injuries as a result of the alleged deprivation. Therefore, this claim fails to raise a constitutional issue. *See Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) (inmate who failed to allege "extreme discomfort" or complete denial of "basic elements of hygiene" did not state Eighth Amendment claim)).

Finally, the Court considers whether Plaintiff states an Eighth Amendment claim against CO Tranyor for Tranyor's alleged labeling of Plaintiff as a "snitch." While being labeled a snitch in prison could undoubtedly place one's life in danger, Plaintiff has not demonstrated that he was actually harmed, or that he is at danger of harm[1], due to CO Tranyor's alleged conduct so as to establish an Eighth Amendment claim. *See Cantanzaro*, 2009 WL 4250027, at *11-12.

## IV.    CONCLUSION

For the reasons set forth above:

1.      Plaintiff's claim of retaliation will **PROCEED** against CO Tranyor in his individual capacity;

2.      The Clerk is hereby **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant CO Tranyor;

3.      Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within thirty (30) days of entry of this memorandum and order. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Fed. R. Civ. P. 4;

---

[1] The Court notes that Plaintiff is no longer housed at NECX, the facility where the events giving rise to this suit occurred [*See* Doc. 18; *see also* Doc. 24 p. 2].

4.        Plaintiff is **NOTIFIED** that failure to return the completed service packet within the time required may result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

5.        Defendant shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default;

6.        All remaining claims and Defendants are **DISMISSED**; and

7.        Plaintiff is **ORDERED** to immediately inform the Court and Defendant or his counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

       **IT IS SO ORDERED.**

                          ENTER:

                          _s/ Leon Jordan_
                          United States District Judge